Sadie Howell, appellant,

*v.*

Clinton G. Howell, respondent.

[Filed July 2d, 1901.]

Where a husband left his wife under a false statement of the purpose for which he was going away from home and of the place to which he was going, taking with him her engagement ring and two watches, which he had formerly kept in his house, and the same day wrote to his wife's father that he had run away; that there was no use tracing him; that he did not know as he would ever be back; that he did not know where he would go, and asking his father-in-law to go and get his wife and move her home; that in a few letters he wrote her, after leaving, he never expressed any intention of returning, nor asked her to join him, nor manifested any regret at the separation, nor contributed anything towards her support and never returned to her, the absence continuing for two years and five months before the petition was filed, the willful, continued and obstinate desertion declared in the statute to be sufficient ground for divorce is proved and the petitioner is entitled to a decree.

On appeal from a decree advised by Vice-Chancellor Grey, dismissing the petition of the appellant, whose opinion is reported in *48 Atl. Rep. 510.*

*Mr. George M. Shipman,* for the appellant.

The opinion of the court was delivered by

Garretson, J.

The appellant filed her petition for divorce April 3d, 1900, on the ground of desertion, and alleges that her husband deserted her in the month of October, 1897. The defendant filed no answer, and the case was heard *ex parte.*

It appears from the evidence that the petitioner and the defendant were married June 2d, 1897; that the defendant lived with the petitioner from the time of the marriage until the

16th day of October, 1897, and taught school from September 1st, 1897, to the 16th day of October, 1897; that on the 16th day of October, 1897, which was a Saturday, the defendant left home on the morning train, having told his wife the day before that he had received a letter from a butcher at a certain place asking him to come and post his books, as he had been in the habit of doing. He usually went on his wheel and came back in the evening, and on this occasion he said first that he would go on his wheel, but afterwards he said that he was tired, and would go on the train; he said he would be back at night; he took his wheel with him. He did not stop off at the place to which he said he was going, but went on with the train beyond there to another place, from which place he wrote and mailed a letter to his father-in-law, stating that he had run away, and was on his road then; that he was going to Port Jervis, and it was no use of tracing him; that he did not know as he would ever be back; he did not know where he would go to; that he was in debt, and could not pay, and wanted his father-in-law to go and get his wife and move her home; that he has never been back, and has never contributed anything to the support of his wife since.

It appears from the evidence that when he went away he took with him his wife's engagement ring, which he had given her, and two watches which he had kept in a trunk, besides a watch which he carried. He owed $150, which he had gotten upon a note the morning he was married, and which note his wife has since paid.

When he first went away he wrote from Baltimore to his father-in-law for clothes and money, and his father-in-law sent him clothes and money. He afterwards wrote to his sister from St. Louis, asking for money, and his wife sent him $20. It does not appear that he ever acknowledged the receipt of this $20. The petitioner had received some letters from him after he left, and before sending him the $20, but it does not appear that in any of them he ever spoke of returning to her, or asked her to go to him, or expressed any regret that they were not able to live together.

On the 30th of June, 1899, more than twenty months after he

had left his wife, she received a letter from him, dated Chicago, in which he addressed her as his "dear wife;" tells her where he is; that he had left the hospital; gives some account of his ailments, and the treatment for them; asks her to remail him a letter which he supposes she had written, and which he had directed should be sent back to the place where he had lived when he left her; tells her he will keep her posted as to his progress; gives her some of his expectations of employment, and what he will make by it; says, "Don't forget and send me back the letter, love, as I don't want to lose any more communications from you;" tells her of the condition of the weather, and concludes, "Remember to sister and the other folks, and don't forget your own husband."

This could hardly be called a letter expressive of very much regard, still less of affection, and it is absolutely destitute of any regret at separation from his wife, or of any desire that she should join him, or of any intention of returning to her.

We have, then, a husband going away from his home, after giving a false reason to his wife for leaving; sending word to her father that he has left with a purpose of not returning, and informing him of that fact, and requesting him to look after her. He carries out his intention, and gives no indication of change in his intention for more than two years and five months before the bill was filed.

It is not necessary that the petitioner should show any motive for her husband's desertion of her. That he was in debt was surely no sufficient motive for his going away; it is no answer to her charge. We can only judge of his intention by his acts, and his leaving his wife under a false statement of his purpose in going away; his taking her property with him; his saying that he was going away; that there was no use trying to trace him; his continued absence for more than the statutory period; his failure to make any provision for his wife, and the total absence, in the few letters he sent her, of any expression of an intention to return, are surely sufficient to satisfy the court that he has been guilty of willful, continued and obstinate desertion.

We think that his act of going away, in the light of the deception practiced upon his wife; his statement of his purposes in

his letter to his father-in-law, and his subsequent failure to give that act any other color, was desertion, and so intended by him, and the use of a few mildly affectionate words in a letter cannot deprive his acts and previous words of their legitimate force.

We, then, have cessation of cohabitation; an intention in the mind of the defendant to desert, and a separation against the will of the petitioner, which, under the decisions in this state, are held sufficient to justify a decree for divorce upon the ground of desertion. *Taylor* v. *Taylor, 1 Stew. Eq. 207; Sergent* v. *Sergent, 6 Stew. Eq. 204.*

The petitioner has made out such a case as, under the statute and decisions in this state, justify a decree for divorce.

*For reversal*—THE CHIEF-JUSTICE, VAN SYCKEL, DIXON, GARRISON, GUMMERE, COLLINS, FORT, GARRETSON, HENDRICKSON, BOGERT, ADAMS, VREDENBURGH, VOORHEES, VROOM—14.

*For affirmance*—None.